to differences of construction.    We think, however, it was the intention of the parties that, if the first action and the judgment therein would, for any reason, whether as an estoppel or otherwise, preclude the plaintiff from successfully maintaining the action, then judgment should be rendered for the defendant, without further proof.    In our judgment, the position taken by the trial judge in his opinion was correct.    If a party defrauded elects to rescind a contract, he must do so promptly after discovering the fraud, and, if, with knowledge of the fraud, he in any measure carries out the contract, or receives a benefit under it, his election is made, and his right to rescind is gone.    Cobb v. Hatfield, 46 N. Y. 533.    "The party defrauded, by performing his part of the contract, with a knowledge of the fraud, is deemed to have ratified it, and is precluded thereby from subsequently disaffirming it," though still retaining his right to damages for the fraud.    Whitney v. Allaire, 4 Denio, 554.    Hence, if the plaintiff, after knowledge of the fraud, had voluntarily paid off the mortgage, he would have unquestionably lost his right to rescind.    While we can find no direct authority in point, we cannot see why, on principle, it was not as much his duty to resist compulsory compliance with the terms of the contract as it was to refrain from voluntary compliance.    His duty, on discovering the fraud, was to repudiate the contract when and wherever it might be asserted, whether in hostile litigations against him, or in proceedings on his own behalf.    We do not see that any oral evidence could have been given which would abrogate the election to affirm the contract, which the pleadings in the earlier action, showing plaintiff knew of the fraud and the judgment therein, necessarily imported, and therefore the judgment appealed from should be affirmed, with costs.

BROWN, P. J., and PRATT and HATCH, JJ., concur.

BARTLETT, J. (dissenting).    I agree with Judge CULLEN, that the judgment in the former action was not a bar to the maintenance of the present suit.    It seems to me, however, that the plaintiff's acquiescence in that judgment is not so clearly established as conclusively to deprive him of the right to rescind.    While he complied with the judgment, he may be able to show that he did so under circumstances of compulsion which prevent that compliance from being in any real sense an election on his part.    I think a new trial should be granted.

(1 App. Div. 289.)

### TOMKO v. CENTRAL R. CO. OF NEW JERSEY.

(Supreme Court, Appellate Division, Second Department.    February 4, 1896.)

INJURY TO RAILROAD EMPLOYE—ASSUMPTION OF RISK.
    A trackman who stepped from the track on which he was working, in the course of his employment, to another, to avoid an engine, without looking down the second track, the view of which was unobstructed, when he could have taken a safer place, and was struck by an engine moving on the second track, in the same direction, and almost abreast of the first.

engine, is negligent, though the moving of trains in the same direction on parallel tracks was not customary on other portions of defendant's road, and he was ignorant of a custom allowing it at the place of the injury.

Action by John Tomko against the Central Railroad Company of New Jersey for personal injuries. There was a verdict for defendant, and plaintiff moves for a new trial on a case and exceptions ordered to be heard in the first instance in the appellate division. Denied.

Argued before BROWN, P. J., and PRATT, BARTLETT, and HATCH, JJ.

W. C. Beecher, for plaintiff.

George Holmes and Robert Thorne, for defendant.

HATCH, J. The substantial claim made by plaintiff, in his opening to the jury, was that the defendant was guilty of negligence in running trains and engines over its tracks, at the place where the injury occurred, in a reverse way from which trains were ordinarily run thereon at other places upon its line, without promulgating a rule relating thereto, or otherwise bringing home notice to plaintiff of the existence of such custom. In the view we take of this case, it is not necessary to determine what defendant's obligations were in this respect. Plaintiff was a track laborer; had been employed upon defendant's road for a period of two years, but, at the particular place of injury, only a short time; and was without information of the afore-mentioned custom of operating trains, but supposed that they were operated at this place in like manner as at other places upon the line where he had before worked. While engaged in his employment, on the west-bound track, facing towards the west, a train passed him on the east-bound track. This train ran to a siding a short distance beyond, and shunted its cars thereon. The engine then started on its return over the same track that it had run out on. At about the same time a train was running upon the west-bound track, and both engines ran nearly side by side on the different tracks, in the same direction. Plaintiff, hearing a bell on the locomotive, looked over his shoulder, saw the locomotive coming west, and stepped from the west-bound track to the east-bound track, where he was, shortly after, struck by the engine approaching upon that track, and seriously injured. It does not appear that he looked in either direction when he stepped upon the east-bound track, or that he, in any manner, made any observation to protect himself from injury while upon this track. It is not apparent why he did not discover the approach of both engines when he looked to the east. They were both running near together, and it does not appear but that both were visible to the sight. No obstructions existed, and, if he looked and saw one, care would have enabled him to see the other. At least, no reason is shown why he should not have seen it. The law exacts care and caution, having regard to the dangers to be encountered. A person cannot place himself in a dangerous position, and omit the vigilance which would apprise him of the danger, without being chargeable with negligence. The use by plaintiff of

his faculty of sight, exercised with care, would have apprised him of the approach of both engines. His failure in this regard constituted negligence. It also appeared that there were a number of employés at work with the plaintiff who received no injury, and counsel stated that the north side (north of the west-bound track) was the safe side, but that plaintiff went off to the south side. Here was a perfectly safe place where plaintiff could have stepped as easily as to make use of the dangerous place. He voluntarily chose the latter, and when he did so it became incumbent upon him to exercise all his faculties to protect himself. The track of a railroad is a dangerous place, and, when a person's employment calls him to its use, he is necessarily exposed to danger from passing trains, and is required to be upon the lookout in all directions. This is a risk which is necessarily assumed as an incident to his employment; and, when he voluntarily exchanges a safe place for one of danger, he assumes whatever of risk there may be, from any source, in the use of the dangerous place, and cannot be heard in complaint if he is thereby injured. Heaney v. Railroad Co., 112 N. Y. 122, 19 N. E. 422. And this result follows no matter how, or in what manner, defendant uses its tracks or operates its trains. The exceptions should be overruled, motion for a new trial denied, and judgment ordered for defendant, with costs. All concur.